CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

EVAN MATEER (CABN 326848)
Assistant United States Attorney

   1301 Clay Street, Suite 340S
   Oakland, California 94612
   Telephone: (510) 637-3680
   FAX: (510) 637-3724
   Evan.mateer@usdoj.gov

Attorney for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 4:25-CR-137-YGR |
| Plaintiff, | GOVERNMENT'S SENTENCING MEMORANDUM |
| v. | |
| TOBIAS SCOLLAY, | |
| Defendant. | |

GOVERNMENT SENTENCING MEMO
CASE NO. 4:24-CR-404-YGR

## I.   INTRODUCTION

Defendant Tobias Scollay comes before the Court having plead guilty to one count of engaging in the sex trafficking of a minor under the age of 18, in violation of 18 U.S.C. §1591(a)(1), (b)(2), and (c). Scollay trafficked or attempted to traffic three minors: MV1, aged 15, MV2, aged 13, and MV3, aged 17, as well as an adult victim and co-conspirator, D.M., aged 20.  Not only were his victims young, but during his trafficking, he himself sexually abused both MV1 and MV2.  Scollay even continued his attempts to traffic MV1 while he was in custody on another charge, using video calls to encourage her to engage in commercial sex work and to continue his sexual abuse.  To account for this egregious conduct and to deter others from abusing vulnerable minors in the same way, the government asks the Court to sentence Scollay to 180 months in prison followed by a 15-year term of supervised release.

## II.   OFFENSE CONDUCT AND BACKGROUND

### A.   Offense Conduct

Over the course of about seven months in 2023, Scollay recruited three minor victims to engage in commercial sex.  Scollay's conduct included physically abusing two of the minors and continued even as he was in custody pending trial on a separate charge.

### 1.   In June 2023, Scollay entices 15-year-old MV1 to engage in commercial sex work

On or about June 11 2023, Scollay met MV1—a 15-year-old girl who had run away from home—while on the Figueroa Street "blade" in Los Angeles, California.  PSR ¶8.  At the time, MV1 was engaged in commercial sex work for another trafficker.  *Id.*  Scollay met MV1 on the blade and convinced her to leave her trafficker to work with him instead.  *Id.*  MV1 left the blade with Scollay and the two went back to his hotel room.  *Id.*  That night, Scollay had oral and vaginal sex with MV1.  *Id.*

The next morning, Scollay and D.M. drove MV1 from Los Angeles to Oakland, where Scollay rented a room at the Oakland Executive Airport Hotel.  PSR ¶9.  Scollay required MV1 to pay a "fee" to work for hhim, which she did using the proceeds she had made from doing commercial sex work with her previous trafficker.  *Id.*  Scollay used at least some of this "fee" to purchase MV1 clothing and condoms. *Id.*  On the evening of June 12, 2023, Scollay took MV1 to the Oakland "blade," where she engaged in commercial sex work on his behalf.  *Id.*  Scollay required MV1 to tell him when she got a "date" and

entered the vehicle. *Id.* After the "date" was completed, Scollay required MV1 to provide him with the money that she made. *Id.*

### 2. Scollay meets 13-year-old MV2 and also recruits her to engage in commercial sex work

While MV1 and D.M. were engaged in sex work on the blade on the evening of June 12, 2023, Scollay met MV2—a 13-year-old girl—who was also on the blade. PSR ¶16. Scollay had previously met MV2 in Vallejo, California, while she was engaged in sex work for another trafficker. PSR ¶15. Scollay tried to recruit MV2 on that occasion, but was unsuccessful. *Id.* On June 12, 2023, however, Scollay was able to convince MV2 to "go home" with him; that is, to leave her current trafficker and work with him instead. PSR ¶16. MV2 went with Scollay to his car, and Scollay then drove to pick up both MV1 and D.M. MV1 and D.M. were both angry with Scollay for recruiting MV2. *Id.*

Scollay drove MV1, MV2, and D.M. to the hotel room at Oakland Airport Executive Hotel. *Id.* As with MV1, Scollay required MV2 to give him money, which he used to purchase outfits and makeup. PSR ¶17. The morning after Scollay brought MV2 to the hotel, he had sex with her. *Id.* MV1 and D.M. became increasingly upset at Scollay for bringing MV2 to the room, and the two decided to leave. *See* Plea Agreement at 3. Later that day, while Scollay was out of the hotel, law enforcement recovered MV2 from the hotel. PSR ¶17.

### 3. Scollay solicited MV3 to engage in commercial sex work

Also in June 2023, Scollay solicited MV3—a 17-year-old girl—to engage in commercial sex work on his behalf. PSR ¶18. Scollay had been in contact with MV3 for some time on Instagram and had tried to convince her to work for him. *Id.* Scollay then encountered MV3 while she was on the blade working for another trafficker. PSR ¶19. Scollay and D.M. attempted to convince MV3 to leave her current trafficker and work for him as well. *Id.* D.M. brought MV3 to Scollay's vehicle, where they spent time talking. Eventually, MV3 agreed to complete a commercial sex date on Scollay's behalf. *Id.* However, after completing the "date," MV3 provided the money she received to another trafficker, rather than to Scollay. *Id.*

### 4. Scollay continued to solicit MV1 to engage in commercial sex work while in custody

On June 19, 2023, Scollay was arrested in Los Angeles for an unrelated assault charge and was

detained pending trial. PSR ¶20. Between June and December 2023, all while in custody, Scollay had numerous calls in which he continued to entice MV1 to engage in commercial sex work for him. *See* Plea Agreement at 3. For example, on June 23, 2023, days after being arrested, Scollay called D.M. and asked her to assist MV1 with commercial sex work, including finding her a place to stay. PSR ¶21. On July 5, 2023, Scollay talked to MV1 directly, instructing her to engage in sex work and that advising her that D.M. would assist her with logistics, such as getting a hotel room. PSR ¶22. Scollay told MV1 that she would need to go to the blade, and that D.M. would be with her to keep her safe. *Id.* Scollay also told MV1 to "play the net," meaning using online advertisements to set up commercial sex dates. *Id.* On July 7, 2023, Scollay again called MV1, complained that she had not yet put money on his prison account, and asked her to engage in sex work *that night* and provide him with the funds. PSR ¶23

In addition to soliciting sex work from MV1, Scollay continued to sexually abuse her from jail. Over the course of November 2023, Scollay had numerous calls with MV1 that were sexual in nature and in which he expressed a desire to have sex with her when he got out of prison. PSR ¶25. These culminated in a video call on November 16, 2023, during which Scollay enticed MV1 to masturbate on the camera for him, displaying her genitals, buttocks, and naked breasts. *Id.*

**B.     Procedural Background**

On July 2, 2024, Tobias Scollay was charged by complaint with violating 18 U.S.C. §§ 1591 (sex trafficking of a minor) and 371 (conspiracy). On May 27, 2025, Scollay waived indictment and was charged by Information with one count of violating 18 U.S.C. §§ 1591(a)(1), (b)(2) and (c) – Sex Trafficking of a Child Under 18 Years of Age. On June 26, 2025, Scollay plea guilty to Count One of the Information pursuant to a plea agreement with the government. The plea agreement was pursuant to Rules 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure. In the agreement, the government agreed to recommend a sentence of not more than 180 months in prison.

**III.   THE SENTENCING GUIDELINES CALCULATION**

The PSR calculates the offense level as follows (PSR ¶¶ 31-61):

Group 1: Minor Victim 1

    a.   Base Offense Level, USSG §2G1.3(a)(2).                                                           30

    b.   Specific Offense Characteristic:

| | | |
|---|---|---:|
|1| a.  USSG §2G1.3(b)(2)(B) (undue influence over a minor): | +2 |
|2| b.  USSG §2G1.3(b)(3)(B) (use of a computer) | +2 |
|3| c.  USSG §2G1.3(b)(4)(A)(i) (involved a sex act) | +2 |
|4| c.  Adjusted Offense Level | 36 |

Group 2: Minor Victim 2

| | | |
|---|---|---:|
|6| a.  Base Offense Level, USSG §2G1.3(a)(2). | 30 |
|7| b.  Specific Offense Characteristic: | |
|8| a.  USSG §2G1.3(b)(2)(B) (undue influence over a minor): | +2 |
|9| b.  USSG §2G1.3(b)(4)(A)(i) (involved a sex act) | +2 |
|10| c.  Adjusted Offense Level | 34 |

Group 3: Minor Victim 3

| | | |
|---|---|---:|
|12| a.  Base Offense Level, USSG §2G1.3(a)(2). | 30 |
|13| b.  Specific Offense Characteristic: | |
|14| a.  USSG §2G1.3(b)(2)(B) (undue influence over a minor): | +2 |
|15| b.  USSG §2G1.3(b)(3)(B) (use of a computer) | +2 |
|16| c.  USSG §2G1.3(b)(4)(A)(i) (involved a sex act) | +2 |
|17| c.  Adjusted Offense Level | 36 |

Multiple Counts Analysis

| | | |
|---|---|---:|
|19| a.  3.0 Total Units | +3 |
|20| b.  Combined Offense Level | 39 |
|21| c.  Acceptance of Responsibility | -3 |
|22| d.  Total Offense Level | 36 |

The PSR calculates Scollay as being in Criminal History Category VI. PSR ¶80. The applicable sentencing guidelines range for Total Offense Level 36 and CHC VI is 324-405 months. The minimum term of imprisonment on Count One is 120 months in prison.

The government agrees with the PSR's calculations of Scollay's Total Offense Level and Criminal History Category.[1]

---

[1] In the parties' plea agreement, the stipulated guidelines calculation included U.S.S.G. §§2X1.1

## IV. SENTENCING RECOMMENDATION

### A. Legal Standard

The United States Sentencing Guidelines serve as "the starting point and the initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991 (citation omitted). In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct; and

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

### B. A Sentence of 180 Months in Prison is Sufficient but Not Greater than Necessary

The government recommends a sentence of 180 months in prison. This significant sentence is warranted by Scollay's outrageous behavior, the grievous harm he inflicted on three vulnerable minors, and his long and persistent criminal history. While the sentence is below the applicable guidelines range, it is in line with sentences received by similarly situated defendants, accounts for mitigating factors, and promotes justice by allowing for a prompt resolution that spares the minor victims from the additional harm and trauma they would suffer if this matter proceeded to trial.

#### 1. Seriousness of the offense

The most important factor in determining the appropriate sentence in this matter is the seriousness of the offense. This conduct is egregious. Scollay put three minor girls through the unimaginable trauma

---

as one of the provisions setting out the Base Offense Level. *See* Plea Agreement ¶7. As the PSR points out, because Scollay did not plead guilty to conspiracy, this provision is not applicable. *See* PSR ¶4. The parties have discussed and neither objects to the PSR's determination of the correct provisions supporting Scollay's base offense level.

GOVERNMENT SENTENCING MEMO
4:25-CR-137-YGR                     5

of having sex with strangers for money. The youth of the victims—three teenagers, the youngest only 13 years old—takes a terrible crime and makes it horrific. Girls of this age should be growing up, going to school, and spending time with friends. But because of Scollay, these three girls were walking the streets of Oakland. And it is not only the sex work itself that makes this crime so horrific. "Blades" are incredibly dangerous places, and sex work is an incredibly dangerous line of work. Women and girls are regularly shot and killed on the Oakland blade. And Scollay knew that the blade is dangerous, which is why he advised MV1 to have D.M., an adult, with him when he was soliciting her further sex work from jail. By putting these girls on the streets, and by having them climb into the vehicles of strangers, Scollay knowingly put their lives in serious jeopardy. Scollay did tremendous, possibly irreparable harm to these three girls.

And the aggravating factors do not stop there. First, each of these victims had runaway from home. They were all vulnerable and alone, and so deeply susceptible to the negative influence of a malign adult. Scollay exploited that vulnerability when he pulled them into his operation, placed them on the street, and sexually abused them. Second, Scollay's motivation for this crime was nothing more than avarice. He exposed these girls to mortal danger and lifelong trauma for his own selfish profit. And Scollay was not satisfied with selling the bodies of his victims; he physically violated a 13-year-old and 15-year-old himself. This abuse alone is worthy of severe condemnation and punishment. Worse still, Scollay did not only violate MV1 a single time. He continued to sexually exploit her even when he was in prison.

The government also notes that there is a 180-month mandatory sentence for sex trafficking a minor under the age of 14, as Scollay has admitted to doing. The government has chosen a resolution that does not include this mandatory minimum sentence for numerous reasons, but among them is the need to protect the victims in this case from the significant additional trauma they would be likely to endure if this case were to proceed to trial. Two of the victims in this case are still minors. While there is significant documentary evidence of Scollay's conduct, a trial would also likely require testimony from one or more of these victims. Testimony would require them to relive their trauma, and face the additional trauma of doing so publicly and under cross-examination. Even if they did not testify, the pendency of this case would likely prevent their finding the closure and healing that they so desperately need. Notwithstanding that it has not been charged, the 180-month mandatory minimum sentence that Congress has assigned for

this conduct is an important benchmark as the Court considers what sentence would appropriately reflect the seriousness of Scollay's offense.

Scollay robbed three minor victims of their innocence. He personally violated two of these girls sexually. He exposed them to innumerable risks, including their own deaths. For this grievous conduct, for this horrible crime, he deserves a significant sentence of 180 months in prison.

### 2. The need for deterrence

For many of the same reasons that this offense is so serious, there is also a significant need for deterrence, both specific and general. With respect to Scollay himself, he has proven that he will not be deterred from committing these heinous crimes. At the time of this offense, he had already been convicted of numerous felonies. He was even on active probation. And yet still he engaged in sex trafficking. Even imprisonment did not stop him from continuing his offense. On jail calls that *he knew were recorded*, Scollay continued his attempts to have MV1 engage in sex work for him. And he continued his sexual abuse of MV1 on those same calls. This significant sentence is needed to protect the community as much as possible from Scollay's relentless persistence in his exploitation of minors.

Beyond Scollay, there is a need to send an unambiguous message to other abusers and traffickers that harming minors in these terrible ways will not be tolerated. It seems that Scollay's motives in this case were personal. He abused these girls for his own profit and for his own pleasure. And in at least two cases, the crime was calculated: Scollay worked over weeks and months to recruit both MV2 and MV3. This sort of crime—done for personal benefit and in a deliberate manner—is especially ripe for the deterrent effect of a severe sentence. Because future offenders, thinking through how they can benefit from the bodies of minors, can be shown that any possible benefit is outweighed by the enormous costs if they are caught and convicted. Sentencing Scollay to 180 months may change the calculus of the next person deciding whether to abuse a minor for their profit or pleasure.

### 3. Factors supporting a variance

The government's recommended sentence—which is below the low end of the guidelines range—also accounts for a number of factors that support a variance.

First, the recommended sentence will avoid sentencing disparities. As the PSR lays out, JSIN data indicates that defendants with Scollay's offense level and criminal history have been sentenced to an

GOVERNMENT SENTENCING MEMO
4:25-CR-137-YGR                                        7

average imprisonment of 187 months and median imprisonment of 171 months. The recommendation is also in line with sentences that have been imposed in similar cases in this district. *See, e.g., United States v. Sparks*, 21-CR-00281-VC (defendant sentenced to 180 months in prison for production of child pornography and sex trafficking of a 15-year-old minor). A sentence of 180 months in prison will therefore avoid sentencing disparities.[2]

There are also mitigating factors specific to Scollay. First, Scollay's early acceptance of responsibility weighs in his favor. In most cases, early acceptance of responsibility is adequately accounted for by the 3-level decrease provided by the sentencing guidelines. In this case, however, Scollay's early acceptance has not only preserved the resources of the government and the Court. It has also spared the minor victims the significant additional trauma that lengthy trial proceedings would entail. Second, the government also notes that each of the victims were involved in sex work when they first met Scollay, and that he was therefore not the first trafficker to place them on the streets. The government further notes that Scollay trafficked each of these minor victims for a limited period of time.

In addition, as the PSR lays out, Scollay has had a difficult childhood and suffers today from untreated drug and mental health issues. He grew up in an unstable household, has been homeless for periods of time, and has been using substances since a young age. It appears that during his childhood, Scollay was exposed to violence and likely himself experience trauma. It is likely that these issues contributed to Scollay's conduct. The government believes it is appropriate to recognize these factors in the sentence, and believe they support the proposed variance.

### B. Supervised Release

The government's recommendation also includes a 15-year term of supervised release to follow 180 months in custody. This lengthy term of supervised release will ensure that the public is protected from Scollay after his incarceration. At the same time, it will allow Scollay a chance to receive the mental and drug treatment he needs, and will hopefully provide Scollay the support that he requires to eventually become a productive member of society.

---

[2] Similarly, given the aggravated conduct in this case, any sentence below 180 months would cause a sentencing disparity between Scollay and those who have received significant sentences for similar conduct.

The parties included in the plea agreement a provision requesting that the Court impose the following search condition:

<u>Special Condition (Searches)</u>

The defendant shall submit his person, residence, office, vehicle, electronic devices and their data (including cell phones, computers, and electronic storage media), and any property under defendant's control to a search by a United States Probation Officer or any federal, state, or local law enforcement officer at any time, with or without suspicion. Failure to submit to such a search may be grounds for revocation; the defendant shall warn any residents that the premises may be subject to searches.

This condition is warranted in this case because of Scollay's use of electronic devices, including his cell phone and his Instagram Account, to communicate with the minor victims.

### C. Restitution

Restitution is mandatory in this case. 18 U.S.C. § 2259. Because the victim's losses have not been fully ascertained yet, the government requests a restitution hearing 90 days from the sentencing hearing. If the parties agree to the restitution amount, they will file a stipulation.

## V. CONCLUSION

For the foregoing reasons, the United States recommends that the Court sentence the defendant to 180 months' imprisonment, 15 years' supervised release, and a $100 special assessment.

DATED: September 25, 2025                    Respectfully submitted,

                                             CRAIG H. MISSAKIAN
                                             United States Attorney

                                             */s/ Evan M. Mateer*
                                             EVAN M. MATEER
                                             Assistant United States Attorney